# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

W. W. WHITEHURST, APPELLANT, v. HEBER AYGARN,
LUCY L. AYGARN AND AMY E. STONE, APPELLEES

June 12, 1930.

Absent, Campbell and Epes, JJ.

The opinion states the case.

*Q. C. Davis, Jr.*, for the appellant.

*F. E. Kellam* and *V. H. Kellam*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Princess Anne county, wherein the appellant was perpetually enjoined from cutting and removing timber or otherwise trespassing upon the twenty-four and six tenth acres of land in dispute between the parties.

The facts in the case are that the appellees in 1924, bought from the executor of James E. Kilgro a certain tract of land, the boundaries to which, as written in the deed, are: "On the north by the lands belonging now or formerly to David Fisher, on the east by the lands belonging now or formerly to Abram Fisher and on the south and west by the North river pocosin." The dispute is over the location of the south and west line. The appellees contend this line extends to Log creek. The appellant contends that "by North river pocosin" is meant the edge of the low land. The word pocosin is of Indian origin, means low swampy land, and seems to be a well known word in Tidewater Virginia. Log creek is a small stream, at times almost dry, and is a tributary of North river. The evidence is not clear whether or not there is a Log creek pocosin as distinguished from North river pocosin. The appellees claim that when they bought their land in 1924, they were shown or told that Log creek was the south and west boundaries. The land embraced in the dispute is lower by six or eight feet than the balance of the tract owned by the appellees and referred to as high land. W. W. Whitehurst, the appellant, contends that the drop from six to eight feet is the beginning of North river pocosin, and that the land in dispute is wild and swampy and has been used in common by the landowners adjacent to the swamp for pasture; that when the appellees refused to let him and others run a fence

between their high and low lands, he, in 1925 and 1926, applied to the Commonwealth and obtained a grant for the land in dispute along with additional land adjacent thereto, and is now the owner by virtue of a land warrant. The appellant's land, formerly owned by his father and on which he had been living for a number of years, joins the high land of the appellees on the east and extends to the swamp. Hence, to the south of the land of both the appellant and appellees is low land. The appellant contends that he has been using the low land back of both his and appellees' farms nearly all his life for any purpose he saw fit, such as hog grazing, cutting timber, fire wood and juniper posts, and that during these years no claim was made by James E. Kilgro to the land now in dispute. On cross-examination, however, it was hard for him to distinguish the times that he used this land and to say definitely whether he was on the low lands south of the Kilgro land, or the land south of his own. The appellees' evidence tended to show that James E. Kilgro, in 1865, when he became the owner of the land now occupied by the appellees, entered into possession of the land in dispute and always claimed that his south and west boundary was the center of Log creek, and a line from Log creek to a bay tree standing in his western boundary line near the high land. In 1913, he had a survey of this line and had it chopped out and the trees in the line glazed; that he exercised complete ownership over this line; together with adjacent landowners, ran a fence between the high and low lands; used the same as a pasture for hogs; used the timber and fire wood therefrom; sold timber, fence rails and posts; he built two boat landings on Log creek, a road to them, and had exclusive control of the same; and that even if the twenty-four and six-tenths acres is not embraced in

his title papers, that he is entitled to the same by reason of adverse possession.

The appellant contends that the holding of the trial court is against the principle of law announced in *Craig-Giles Iron Company* v. *Wickline*, 126 Va. 223, 101 S. E. 225, 229, and other Virginia cases of similar holding. Judge Kelly, in the course of the opinion in the above case, said: "The additional acts of paying taxes, asserting title and forbidding trespasses do not aid a situation like this. The primary fact of actual possession must first be established; when this is done, proof of such additional acts is admissible, not as showing the possession itself, but as showing its good faith, exclusiveness, notoriousness and hostility."

In the instant case the evidence of actual, exclusive and notorious possession was in conflict. The trial judge who saw and heard the witnesses while testifying has decided this conflict against the appellant. His conclusions on questions of fact are entitled to great weight and consideration and ought not to be set aside in case of doubt and uncertainty. The decree of the trial court will be affirmed.

*Affirmed.*